NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In the Matter of:

THE DOBYNS FAMILY TRUST Dated July 10, 1998.

KAMILLE MULCAIRE, as Personal Representative of the
Estate of Thomas Mulcaire, and MICHAEL MULCAIRE,
*Petitioners/Appellees*,

*v.*

KIMBERLY MULCAIRE; THOMAS PIERRE MULCAIRE; and JESS
MULCAIRE, *Respondents/Appellants*.

DAVID MONGINI and CECIL WALLACE, Co-Trustees,
*Respondents/Appellees*.

No. 1 CA-CV 16-0067
FILED 1-26-2017

Appeal from the Superior Court in Yavapai County
No. V1300PB201280021
The Honorable Jeffrey G. Paupore, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Dennis P. Bayless, PLLC, Cottonwood
By Dennis P. Bayless
*Counsel for Petitioners/Appellees*

Musgrove Drutz Kack & Flack, PC
By Mark W. Drutz, Jeffrey Gautreaux
*Counsel for Respondents/Appellants*

---

**MEMORANDUM DECISION**

Presiding Judge Randall M. Howe delivered the decision of the Court, in which Judge Lawrence F. Winthrop and Judge Jon W. Thompson joined.

---

**H O W E**, Judge:

**¶1**        Thomas Mulcaire's children, Kimberly, Thomas Pierre, and Jess ("the Mulcaires") appeal the trial court's ruling requiring that Dobyns Family Trust ("the Trust") assets be distributed to Thomas Mulcaire's estate. They argue that the distribution provision in Article X of the Trust mandates that their father's share be distributed to his descendants. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**        In 1998, Erma and Faires Dobyns established the Trust. The Trust's beneficiaries are Erma's children from a prior marriage: Sheila Mongini, Michael Mulcaire, Patricia Wallace, and Thomas Mulcaire. The Trust provided that upon the surviving spouse's death, the trustees were to distribute the Trust assets. The pertinent provision contained in Article X of the Trust read as follows:

> The Decedent's Trust, including any portions which may be added to the Decedent's Trust by reason of the non-exercise of powers of appointment, shall be administered and distributed upon the death of the Survivor as follows:
>
> . . . .
>
> C. *Division of the Trust Estate*. The Trustee shall divide the remaining trust into separate equal shares so as to provide one (1) share for each child of the Settlors, namely Sheila Mongini, Michael S. Mulcaire, Patricia I. Wallace, and Thomas Mulcaire; provided, that in the event any beneficiary named has predeceased this event, his or her share shall be distributed to his or her descendants by right of

2

representation. If no descendants be alive, his or her share shall be divided among the survivor(s) of any descendants of Settlors, by right of representation, free from trust. Shares so established shall be distributed to the beneficiary or beneficiaries except as provided in the following paragraph D of this Article and in Part II, Article I set forth hereinafter.

Additionally, the Trust contained a "simultaneous death" provision, which provided that if both a settlor and a beneficiary died simultaneously, the settlor was presumed to have survived the beneficiary and the beneficiary's descendants would receive his or her share. Erma Dobyns died in 2005. In December 2011, Faires Dobyns died, triggering the Trust's distribution provision. All four of the Trust's beneficiaries were living at the time Faires died in 2011.

¶3        Under the distribution provision, the first distribution gave Faires's son from a previous marriage $25,000. The second gave Michael Mulcaire a specific plot of land. After those two specific bequests were satisfied, subsection C of the provision required the trustees to divide the remaining trust assets into four separate equal shares. Each of these shares were to be distributed to Sheila, Michael, Patricia, and Thomas. The provision then stated that "in the event any beneficiary named has predeceased this event, his or her share shall be distributed to his or her descendants by right of representation."

¶4        In March 2012, before the distribution to the four beneficiaries could take place, Michael and Thomas filed a breach of trust complaint against the trustees of the Trust. Although the Trust required distribution upon the death of the surviving spouse, the litigation stopped any distribution from occurring. Roughly a year and a half after the breach of trust complaint was filed, the trial court ruled in the trustees' favor. Michael and Thomas appealed that ruling to this Court. However, in August 2014, Thomas died while the case was still on appeal. Both parties filed a notice of death and beneficiary change. The trustees sought to make Thomas's children the beneficiaries while Michael and Thomas's estate argued that the estate was the proper beneficiary under the Trust. In January 2015, this Court issued its mandate affirming the trial court's breach of trust ruling but did not decide who was the proper beneficiary under the Trust's distribution provision.

¶5        Michael and the personal representative for Thomas's estate, Kamille Mulcaire (collectively "the Estate"), argued that the estate was the proper beneficiary under the distribution provision because the

requirement that a beneficiary not predecease "this event" meant the beneficiary needed to be alive when the surviving spouse died. Essentially, the Estate contended that because Thomas was alive when Faires died, he was entitled to his share of the Trust assets. After the trial court requested briefing, it determined that the meaning of "this event" in the distribution provision meant Faires's death. The trial court further ruled that because Thomas was alive when Faires died, his share vested at that moment.

¶6        The trial court ordered the trustees to immediately distribute Thomas's share to his estate. The trustees moved for reconsideration, which the trial court denied. The Mulcaires timely appealed.

## DISCUSSION

¶7        The Mulcaires argue that under the distribution provision's plain language, Thomas Mulcaire's share of the Trust assets should be distributed to them as his descendants. In construing a trust, the ultimate goal is to determine the intent of the trustor, *In re Estate of King*, 228 Ariz. 565, 567 ¶ 9, 269 P.3d 1189, 1191 (App. 2012), and when the language of the trust is clear, the court will not look outside of the trust to determine that intent, *In re Estate of Zilles*, 219 Ariz. 527, 530 ¶ 9, 200 P.3d 1024, 1027 (App. 2008). A trust is interpreted according to its terms. *KAZ Constr., Inc. v. Newport Equity Partners*, 229 Ariz. 303, 305 ¶ 7, 275 P.3d 602, 604 (App. 2012). When the issue is purely one of interpretation, we determine de novo whether the trial court correctly applied the law to the facts. *See Zilles*, 219 Ariz. at 530 ¶ 7, 200 P.3d at 1027. Further, we review the trial court's conclusions of law de novo. *Id.* Because the language of the Trust's distribution provision is clear and unambiguous, the trial court did not err by ordering that Thomas Mulcaire's share be distributed to his estate.[1]

¶8        Here, the Trust language is clear that "this event" in the distribution provision means the death of the settlor. All three of the subsections in Article X take place after one common event, the survivor's death. Reading the introductory sentence of Article X in unison with subsection C results in the following: when the survivor dies, the Trust assets are equally distributed unless one of the beneficiaries predeceases the survivor. Only when the beneficiary predeceases the survivor do his or her

---

[1]        Because we find that the language in Article X is clear and unambiguous, we need not reach the Mulcaires' argument that the trial court erred by failing to consider extrinsic evidence. *See Zilles*, 219 Ariz. at 530 ¶ 9, 200 P.3d at 1027 ("[E]xtrinsic evidence is not admissible to contradict the plain language of the trust.").

descendants take the beneficiary's share. Therefore, the clear language in the Trust requires distribution to a beneficiary if the beneficiary is alive when the survivor dies.

**¶9**     The Mulcaires counter that the language, "this event" means the distribution of the Trust assets and not the survivor's death. However, this interpretation blurs the meaning of the distribution provision. The provision deals with what will occur following the survivor's death. The only event discussed in Article X before the subsections is the survivor's death. If the Trust is interpreted as the Mulcaires suggest, the distribution of the Trust could be frustrated indefinitely. For instance, if a beneficiary has to be alive at the time of distribution, the other beneficiaries could purposefully delay the distribution, hindering the goals of the Trust. As long as one beneficiary delayed the distribution of the Trust, other beneficiaries would be at risk of never receiving their share of the distribution. This cannot be the intent of the settlors. Accordingly, because Thomas Mulcaire was alive at the time that the surviving spouse died, he did not predecease "this event."

**¶10**     The Mulcaires next argue that the entirety of the Trust evinces the settlors' intent to have their assets distributed to only living blood relatives. To support their argument, the Mulcaires rely on Article X, the "simultaneous death" provision, and the fact that Erma's four children were named as the only Trust beneficiaries. According to the Mulcaires, the simultaneous death provision in the Trust means that the beneficiary would predecease "this event" and therefore his or her descendants would receive the share. This provision, however, provides no clarity to the issue at hand. Thomas Mulcaire and Faires did not die simultaneously and Article X is clear: upon the survivor's death the beneficiaries are entitled to their share of the Trust assets.

**¶11**     The Mulcaires further argue that because Thomas Mulcaire's litigation over the Trust caused the delay in distribution, his estate should not be allowed to receive his share. The Mulcaires, however, provide no authority for the proposition that the estate should be barred from receiving the share because Thomas Mulcaire's litigation delayed the distribution. Michael and Thomas Mulcaire filed their breach of trust complaint a few months after Faires died. Although Michael and Thomas were unsuccessful in their litigation, they were entitled to legally resolve their dispute with the trustees. Had Thomas Mulcaire not died during the original appeal he would have been entitled to his share because he did not predecease the surviving spouse.

¶12        Finally, the Mulcaires argue that if the Trust is not interpreted as they suggest, then it should be found ambiguous and remanded to the trial court for an evidentiary hearing. The Mulcaires claim that the Estate acknowledged that the Trust was subject to competing interpretations and that this is enough to find the Trust ambiguous. The fact that a trust can be interpreted differently by two parties, however, does not mean a trust is ambiguous. *Cf. In re Estate of Lamparella*, 210 Ariz. 246, 250 ¶ 21, 109 P.3d 959, 963 (App. 2005) ("A contract is not ambiguous just because the parties to it [] disagree about its meaning.").

¶13        Accordingly, the requirement that the beneficiary not predecease "this event" requires that the beneficiary be alive when the surviving spouse dies. Therefore, because Thomas Mulcaire was alive when the distribution provision went into effect, his estate is entitled to receive his share of the Trust assets.

## CONCLUSION

¶14        For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:  AA